Care, J
This case turns upon the correctness of the opinions expressed by the court in instructions to the jury. These instructions were, in effect, that the indorser having taken a transfer to trustees for his indemnity, of all the effects of the maker, was thereby placed in the shoes of the maker; and as a demand of payment at the place appointed in the note, is not necessary to charge the maker, so no such demand was necessary under such circumstances, to fix the liability of the indorser. The deed.-is made an exhibit in the bill of exceptions, and I think may fairly be considered a conveyance of all the grantor’s property. It is given for the security of several enumerated debts; and among others, of one fourth. of the note on which the suit was brought. What was the value of the property, or what proportion it bore to the debts intended to be secured by it, does not appear: that it was not sufficient to secure the whole, we are obliged to conclude. The question is, was this opinion of the court correct?
Whether, where the suit is against the maker of a promissory note, payable at a particular place, it is necessary to prove a demand of payment at such place, is a question that need not be discussed, until we are satisfied that the indorser in the case before us stands in the shoes of the maker. But *529 we may lay it clown as unquestioned law, that as a general proposition, the indorser stands in a situation very different from the maker. He is not the real debtor, but a surety only: his undertaking is collateral, that if upon duo diligence having been used against the maker, the money is not paid,' he will become liable for it. This due diligence is a condition precedent to a right of recovery against him. There-5 fore, when a note is made payable at a particular place, proof of a demand at the place, is indispensable, in a suit against the indorser. Did the deed place the indorser completely in the shoes of the maker ? I should agree that it did, if it appeared, that the property conveyed was sufficient for full indemnity against the note, and was by the deed appropriated to such indemnity; but the sufficiency of the property makes no part of the case; and it appears by the deed, that the trustees are not authorized to appropriate any part of it to indemnity against more than a fourth of the note. It was said, however, that the property, whether adequate or not, was all the maker had; and that having thus become utterly insolvent, there could be no hope of his providing funds at the bank to discharge the note, and therefore no necessity of presenting it. But we see, from many cases, that the most perfect knowledge of the insolvency or even bankruptcy of the maker, does not dispense with a due presentment and notice of dishonor. He may have friends or credit; or the sagacity and vigilance of the indorser may discover other sources of indemnity. It is his own affair, and he ought to be the judge. It is in this aspect of the case, that lord Eldon in Boultbee v. Stubbs, 18 Ves. 21. says, that “ if the acceptor of a bill becomes bankrupt, the holder must give notice to the drawer; as another person has no right to judge what are his remedies.” But it was said, that here the insolvency is produced by the indorser himself; that he has appropriated to his own use the funds which might have gone to discharge the note; and that we cannot suppose such a conveyance would be made, without an agreement between the parties, that the indorser should attend to the note, take the maker’s place, and *530 release him from all further care about it. I cannot perceive the correctness of this reasoning. Why should the indorser take the maker’s place? Was it not better that he should continue to hold his station of collateral surety ? better both for himself and the maker? He was bound conditionally for the debt; and he might well say to the maker,—“ my friendship for you has led me into this engagement; it is but fair, that you secure me, so far as you can; your property may not pay a fourth of the debt, yet it will be something: in the meantime, we will continue to hold our relations of principal and surety: before the note comes to maturity, new prospects may open upon you, new friends may arise, new accessions of fortune may fall in ; and the holder of the note will have to proceed with due diligence before he can come upon me.” Is not this the more natural course ? And does it invade any right of the holder, or impose any hardship on him ? No; he has only to attend to his own interest, and pursue the beaten track of due diligence. I cannot think then that by the execution of the deed, the indorser lost his character of surety, and became a principal debtor; and I am of opinion, that in order to charge- him, it was incumbent on the holder of the note to prove,- at least, a presentment at the place of payment, if not due notice of such presentment. It will be observed, that I have cited no cases in support of this opinion; not that I have not read, and considered, and puzzled myself with, the multitude that were commented on in the argument; but because, finding them like the ^wiss troops, fighting on both sides, I have laid them aside, and gone upon what seems to me the true spirit of the law. I think the judgment should be reversed.
Cabell, J
This is a joint action against the maker and indorser of a promissory note, made payable and negotiable at the Farmers Bank of Virginia.
Two points were made in the argument: 1. that a demand of payment at the bank was not necessary to support the action against the maker: 2. that the maker having, *531 with the knowledge and consent of the indorser, made a conveyance to a trustee, of all his property to pay certain enumerated debts, and one fourth part of the debt in controversy, the indorser was thereby placed in the shoes of the maker, and, consequently, that no demand of payment at the bank, nor notice of the dishonor of the note, was necessary to support the action against the indorser.
I shall give no opinion on the first point; it being unnecessary to decide it in this case; for, as this is a joint judgment against maker and indorser, it must be reversed, if it is erroneous as to either of them : I will say, however, that I have considered the subject with much attention, and that my present impression is, that a demand of payment at the bank, is not necessary to support the action against the maker.
But, as to the indorser, he does not become a debtor by his indorsement. He is a surety for the debt of another, and becomes bound to pay, only on the condition that the debt shall not be paid by the maker, after due diligence shall have been used, and notice given of non-payment. Where a note is payable at a particular time and place, due diligence requires that it shall be presented at that time and place. Such being the terms of the undertaking of an indorser, it is incumbent on the holder of a note, to shew a compliance with them, on his part, by suitable averments in his declaration, and by proper proofs at the trial, or to shew, in like manner, a proper excuse for their omission. These terms not having been complied with in this case, we have only to examine into the sufficiency of the excuse offered by the plaintiffs.
It-is perfectly settled, that the insolvency or bankruptcy of the acceptor of a bill of exchange, or the maker of a promissory note, and knowledge, on the part of the indorser, of that insolvency or bankruptcy, and that the note cannot and will not bo paid by the acceptor or maker,—will not exempt the holder from the obligation of due presentment, and notice of dishonor. Nicholson v. Gouthit, 2 H. Blacks. 612. Staples v. Okines, 1 Esp. Rep. 332. Esdaile v. Sowerby, *532 11 East 117. Many other cases to the same effect, might he cited from the courts of 'England, and of our own country; but it cannot be necessary. In Staples v. Okines, the drawer of a bill of exchange, having effects in the hands of the drawee, was told by the drawee, before it became due, that he the drawee could not pay it; and it was then understood between them, that the drawer would have to provide for it; yet even this knowledge on the part of the drawer, and this understanding between him and the drawee, did not excuse the want of notice. In fact, if the indorser remains passive, if he does nothing, and the holder fails either to make due demand of payment, or to give notice of the dishonor of the note, the indorser can rarely, if ever, be made liable.
There are, however, some acts of the indorser, antecedent to the time of payment of the note, that will excuse the want of notice. But an examination of the cases will shew, that they are such acts of .the indorser, as would make it fraudulent or improper in him, towards the holder or maker, to insist on notice. Thus,, where the drawer of a bill, a few days before it became due, stated to the holder, that he had no regular residence,'and that he would call'and see if the bill had been, paid by the acceptor, it was held that he was not entitled to notice from the holder, “ he having taken upon himself the duty of inquiring if the bill was paid.” Phipson v. Kneller, 4 Camp. 285. So also, where the drawer of a bill, upon being applied to by the holder, before it became due, to know whether it would be paid, said it would not be paid, it was held that notice of non-payment was not necessary; Brett v. Levett, 13 East 212. This case, seemingly inconsistent with previous decisions, may be reconciled to them, on this ground, and on this ground only; namely, that it would be a fraud in the drawer towards the holder, to avail himself of the omission to give notice of the non-payment of the bill, after he himself had declared to the holder that it would not be paid: a declaration which probably produced the very omission, of which he sought to avail himself.
*533 In Corney v. Da Costa, 1 Esp. Rep. 303. it was decided, that where the indorser of a note, had taken from the maker, before the note became due, effects to the amount of the note, for the purpose of paying it, he was not entitled to notice. Bayley, in his treatise on bills of exchange, p. 202. referring to this case, says,—“ if the payee of a note lends his name, and takes effects of the drawer to answer it, he is not entitled to notice, because he is the proper person to pay it, and would be entitled to no remedy over on making payment.” And in Brown v. Maffey, 15 East 222. he farther explains the ground of the decision, by saying, that “it would have been a fraud in the indorser to call upon the maker of the note, because, before it became due, the maker had deposited effects in his hands to answer the amount of his indorsement.”
Let us now see if the case before us comes within the principles of any of these cases. In our case, there was no communication between the indorser and holder: nothing was said or done, calculated to mislead the holder, and seduce him into the neglect of a duty which he might otherwise have performed. As to his consent that the note should be negotiated at the Bank of the TJ. States, it was of no kind of consequence: the holder had a right, without his consent, to negotiate it where he pleased. The face of the note told the holder, that it has to be paid at the Farmers Bank. It is, therefore, unlike the cases of Phipson v. Kneller, and of Brett v. Levell, already commented on. It is equally unlike the case of Corney v. Da Costa: in that case, there was an assignment to the indorser, of effects to the amount of the indorsement. Here, there is an assignment of all the property of the maker; but it does not appear, that it was equal to the amount of the indorsement. We are not at liberty to say that it was so; for it is neither averred nor proved. And we must not forget, that the burden of proving every matter of excuse, is upon the holder. It was not incumbent on the indorser to prove any thing. We must take it, then, in this case, that the property was not sufficient; and not being sufficient to discharge the whole amount of the indorsement, “ the indorser was not *534 the proper person to pay the note;” that part of it at least, ( , ■ to which the assigned effects were insufficient. It cannot be said of him, as was said of the drawer in Corney v. Da Costa, that “ he had no remedy over on making payment;”— or, that “ it would have been a fraud in the indorser to call on the maker.” As to the part of the note, to the payment of which the assigned property was insufficient, he had an unquestionable right to call on the maker; and as to this, he stood on his original undertaking as indorser; -under no more| obligation to pay it, than he would have been-to pay the whole note, if no property at all had been assigned ;■ and, consequently, all the original obligations of the holder still subsisted.
The indorser, in taking an assignment of property sufficient to pay only part of the note, did not undertake to pay the residue. It may be confidently asserted, that there. is not, in the terms of the assignment, any express-contract to that effect; nor can I see a single circumstance in.the whole transaction, from which such a contract can be implied. The assignment of property sufficient only for the partial indemnity of the indorser, was a matter between him and the maker of the note. There was no motive in either of the parties to that arrangement, which could induce a 'wish, that the indorser should waive the condition of his liability. How, then, can we imply such-w.áiver, in favor of a person who was no party to the arrangement.? In the case of Staples v. Okines, where the acceptor of a bill of exchange told the drawer that he, the acceptor, could not pay it, and where it was even understood between the draioer and acceptor, that the drawer would have to provide for it, no waiver of notice was implied, in favor of the holder. How then can we imply it from the mere fact of a partial indemnity ? Suppose the maker of this note had had no other property but money (not equal however to the amount of the note), and had put that money, all he had, into the hands of the indorser, to be applied by him to the payment of the note. Would this have exempted the holder from the obligation of presenting the note, and giving notice of its dishonor ? Cer *535 tainly not: and I am unable to see any difference between the deposit of money and the assignment of propeity so far as regards the point under consideration.
Nor is there any resemblance between an indorser of a note, partly indemnified, and the drawer of a bill of exchange, who withdraws his effects from the hands of the acceptor, before the day of payment. In the latter case, the drawer has no right to expect that the acceptor will pay; and therefore, he is not entitled to notice. But the indorser’s right to notice from the holder, depends on another principle ; namely, his remedy over against the maker. And this principle applies as forcibly to a case where a part only of a note remains unpaid or unprovided for by the maker, as where the whole of it remains so unpaid or unprovided for.
Again, the assignment in this case was made about a month before the note was to fall due. It is impossible for us to say, that no accession was made, in that interval, to the maker’s means of payment; and, of course, we cannot say, that notice to the indorser would have been unavailing.
Although I have not adverted, by name, to the cases which have been decided on this subject, in our sister states, I have not been inattentive to them. I have not, however, been convinced by them; and I have, in the course of the preceding remarks, controverted every reason on which they were founded; whether successfully or not, is left for others to determine.
Upon the whole, I am of opinion, that the holders of the note before us, were bound to proceed strictly with it, as respects the indorser, both as to demand of payment, and as to notice; and, consequently, that the judgment must be reversed, on account of the erroneous instruction given at the trial.
Brooke, J.
The rule that a bill of exchange must be treated by the holder, according to the tenor of the contract on its face, is a general rule of the law merchant; yet not so arbitrary and inflexible, that nothing can be dispensed with by the parties to the bill. In the case before us, if the *536 plaintiffs had treated the note (which is put on the foot of a , bill of exchange by the charter of the Fanners Bank, by being made negotiable and payable at that bank) according to the requirements on its face, they should have negotiated and presented it for payment at that bank, the day it fell due; and this should have been averred in their declaration, and proved on the trial. The sense of that rule of the law merchant, is to protect the indorser from loss; to afford him the opportunity, if the bill or note is not paid, to resort, immediately, to the drawer or maker, and to get indemnity, if he can, against his liability to the holder. As regards the maker of a note himself, he being directly and not collaterally bound (as the indorser is), any failure of the holders to treat the note according to the tenor of the contract on its face, is matter of defence merely, affecting the costs and damages: but, as regards the indorser, he being only collaterally bound, has a right to insist on the treatment of the note according to its tenor, or he is absolved from all responsibility. And as the present is a joint action, unless the indorser of the note is responsible, there can be no recovery in this action against the maker.
The bill or note, must be treated according to the contract expressed on its face, or some sufficient excuse must be shewn by the holder for his failure so to treat it. As to such excuse, there is great diversity of opinion both in England and in this country. It has been decided, that bankruptcy or actual insolvency of the acceptor or maker,—or full knowledge of the indorser, that the bill or note will not be paid when presented at maturity,—will not absolve the holder from the necessity of treating it according to its tenor and to the general course of the law merchant; that is, making due presentment of it, in due time, and at the place designated, and giving notice of dishonor. Nicholson v. Gouthit, 2 H. Blacks. 609. Staples v. Okines, 1 Esp. Rep. 332. Esdaile v. Sowerby, 11 East 113. In these cases, it is said, that none of the enumerated facts (that is, bankruptcy &c.) will excuse the holder, because the acceptor or maker may have some new accession of property, though at the time there is not the *537 slightest prospect of his ever being able to pay the bill or note. This doctrine I do not mean to disturb,—though I think it too speculative to be established as settled law. Prima facie, surely, evidence that the note or bill will never be paid by the party directly bound to pay it, ought to be considered as conclusive, until contradicted by opposing facts.
However, it must be admitted, that there are some acts of the party collaterally hound, which will dispense with the due course of proceeding by the holder; which would make it improper in the indorser, to insist on the strict course of proceeding. I admit, that the acts of the acceptor or maker and the holder, are not to affept the indorser, unless he is privy and consenting to them; but the converse of this is not true. In the case of Corney v. Da Costa, 1 Esp. Rep. 303. the acts of the maker and indorser, without the knowledge of the holder, rendered it unnecessary for him to treat the bill or note according to the requirements on its face. There, the indorser had taken effects from the maker, before the note became due, for the purpose of paying the note, to its full amount; and it was held, that the holder was not bound to aver and prove notice of dishonor. In such case, the failure to present the bill or note, and to give notice of dishonor to the indorser, would be matter of defence only, as regards costs and damages, because thereby the indorser was not collaterally bound to pay, but directly.
These remarks bring us to the case before us. The sense of the rule that the holder must treat the bill or note with due-diligence, according to its tenor and the law merchant, being to prevent injury to the indorser, this may be excused, where the failure of the holder works no injury to the indorser; as in the case of Corney v. Da Costa. So, I think it maybe excused, wherever the indorser has so, meddled with the negotiation of the bill or note, as to put the holder off his guard, as to due diligence. The note, in the present case, was on its face negotiable and payable at the Farmers Bank. In one of the bills of exceptions, it is stated, that *538 the indorser consented that the holders should change the place of its negotiation to the branch Bank of the U. States. I do not mean to say, that the holders might not have negotiated the note at the Bank of the U. States, without the consent of the indorser; in which case, the indorser would have been entitled to insist that it should be treated by the holders according to the requirements on its face: but, as between the original parties to the note, this Consent of the indorser was calculated to make the impression on the holders, that, as thereby the place where the note was made negotiable (which put it on the foot of a bill of exchange) was agreed to be changed by the parties most interested, so the contract on theYace of the note was, in that respect, changed; and that the indorser would not expect or insist, that the note should be treated by the holders, in other respects, according to the requirements on its face. The other circumstances of the case corroborate this view of it; and though taken singly, they might not be sufficient to dispense with the due and regular treatment of the note, yet taken together, they furnish ground for excusing the holders from a pro forma presentation of it for payment at the Farmers Bank, when it fell due, and giving notice &c. The circumstances I refer to, are, that the indorser knew, that the note, if presented, would not be paid; and that he took the deed of trust, conveying the whole of the maker’s property, only twenty days after the date of the note, and forty before it fell due, for the pu rpose of paying one fourth of the contents (and perhaps the whole, if the property conveyed should be sufficient) and other debts; of which deed the indorser was fully apprised, and of which the holders' also were bound to take notice, the deed being recorded before the note fell due. These circumstances leave no doubt, that if the note had been duly presented at the Farmers Bank, it would not have been paid, and (in the absence of any proof to the contrary) that no possible injury could result to the indorser, from the failure of the holders to present the note for payment in due time and place. These considerations vary the present from the cases of bankruptcy or insolvency, which were .relied on as analogous. *539 In such cases, clue diligence is important to the indorser. A party is said to be insolvent, when he has not effects to pay all his debts; there may, notwithstanding, be much property, to which the indorsor may look, for his indemnity. So, too, in the case of bankruptcy. But in a case like the one before us, the indorser assenting to the deed of trust, in which the whole property of the maker was conveyed away, could not be benefited by the due presentation of the note, when it fell due, and notice thereof: he had full notice to take care of himself, nor could the most exact treatment of the note by the holders have been of the least benefit to him. If there vas any new accession of property, he was as well prepared to take care of himself, as if the note had been duly presented. It is correctly said by the judge who delivered the opinion of the court in the case of The Mechanics Bank v. Griswold, 7 Wend. 168. that, “ Upon the maxim, that when the reason of the rule of lav/ does not exist it ought not to be applied, it has been decided, that in cases where the non-payment by the maker, and failure of notice to the indorser, cannot possibly operate to his injury, the omission will not discharge him.” He refers to Corney v. Da Costa (above cited), Brown v. Maffey, 15 East 216. Bond v. Farnham, 5 Mass. Rep. 170. If I were to rely on these cases as authority, they would be abundantly suffieient; but I rely on the principles settled by the English judges as well as our own; and applying them to the case before me, with all due deference to the opinions of a majority of the court, I must think the instructions of the circuit court in this case correct, except the instruction to the jury, as to the fact of the usage of the Bank of the U. /Slates. But that, in the view I have taken of the case, was immaterial. If it had been material, whether the usage stated by the judge existed or not, the fact of the usage should have been left to the jury.
Upon the whole, 1 think the judgment ought to be affirmed.
*540 Tucker, P.
The promissory note, in this case, having been negotiable and payable at the Farmers Bank of Virginia, the first question that presents itself, is, whether in an action against the maker of the note, it is necessary to prove a demand of payment at the place at which the note is payable, in order to sustain the action against the maker. And I am of opinion, that, whether we consider promissory notes as governed by the well received principles of the common law, or as falling within the influence of the law merchant, in consequence of their having been put upon the footing of bills of exchange, the weight of reason and authority is against the necessity of such proof.
Let us consider the case first upon common law principles, as applicable to bonds, notes and other contracts. According to them, if a man engages to pay upon demand what is his own debt, he is liable to be sued upon that engagement without any previous demand. The bringing the action is the demand, and a tender, or readiness to pay, must come by way of defence from the defendant. Moreover, though a special time and place be appointed for payment, an actual demand at the time and place, is not necessary to be averred or proved, as part of the plainlifPs case; but a tender or readiness to pay at the time and place is matter of defence, and of defence only ; and the defendant who pleads such matter, though he thereby protects himself against the damages and costs, must yet bring the money into court, which the plaintiff will forthwith be entitled to have. These principles are clearly laid down by several of the judges, in delivering their opinions in the case of Rowe v. Young, 2 Brod. & Bing. 165. 6 Eng. C. L. R. 53. See also 1 Wms. Saund. 33. note 2. Nor do I understand them to have been controverted by any, except in relation to the cases of bills of exchange, and promissory notes negotiable as such. They are principles, indeed, essential to the administration of justice. If a demand on the day and at the place of payment, be a condition precedent to entitle the holder of a promissory note to recover his money, then, although he be prevented by causes which he could not control, he must lose his debt, *541 unless lie has made such demand. Is there either reason or good sense in such a doctrine. Is it justice, that the debtor shall be absolved from his debt, because the creditor has not been able, or has even neglected to demand it, at the day and place appointed for payment ? It cannot be pretended ; and, accordingly, various schemes have been devised, for avoiding so monstrous a consequence. One or more judges have supposed, that the maker is not indeed absolved from payment, but “ must keep the money at the place of payment, and must never remove it; and that the payee may take it whenever he pleases;” per Best, 6 Eng. C. L. R. 64. They consider “ it not necessary to aver presentment at the day when the debt becomes due, because the acceptor is liable at all times afterwards, when it is presented at the proper place;” per Wood, Id. 95. Now, it is difficult, in the first place, to imagine, why payment at the place should be a condition precedent,, and payment at the day not so. If there be a difference it should operate the other way : time is more of the essence of an engagement to pay money, in ordinary transactions, than place; and if the plaintiff is to be tied down to the necessity of proving a strict compliance as to either, one would suppose, it would be most important to hold him strictly to the time: Moreover, the notion, that the party “ must never remove the money,” and that the debtor is liable upon any subsequent demand at the place, which implies the necessity of his keeping the money there, is only adapted to the case of a note payable at a banker’s. But suppose one contracts to pay 100 dollars at Christmas in the hall of the house of delegates, and his creditor fails to attend: what is to be the consequence ? Is he to lose his debt because he could not or did not attend? Or is the debtor to leave the money there, until the creditor calls for it, or shall he await his coming ? Either supposition is absurd : and hence, it is evident, that this scheme devised for avoiding the difficulty, will not meet the exigencies of the case. It could only apply, with any sort of propriety, to the case of payment at a banker’s. But a rule so limited in its use and application, cannot be the rule of the common law.
*542 Another idea has been suggested. Lord Ellenborough and others have intimated, that the action might be sustabled on the common counts, though it could not upon the note itself. But it has very well been asked, how the plaintiff could be permitted to succeed on the common counts, if there has been such laches on his part, that he cannot succeed on the note itself? 17 Johns. Rep. 254. How can he sustain his demand on the common counts, where it appears that there was a special contract, with which he has failed to comply ?
On the other hand, the rule laid down by justice Bailey, in Rowe v. Young, as the rule of the common law, completely effects the ends of justice. The plaintiff need not, as against his debtor, aver a demand at the precise time and place. If he fail to make such demand, he forfeits all claim to damages and costs, from which the defendant may protect himself, by plea of his readiness to pay at the day and place; but he receives his debt, which the defendant brings into court with his plea. Moreover, if after the day, the debtor withdraws his funds from the place as he well may do, since the demand from that time follows the person, he may at any time discharge himself from the debt, by payment to the holder wherever he may be found.
From what has been said, it is obvious, that on failure of the creditor to demand the debt at the day and place, these alternatives present themselves; either that the creditor shall lose his debt, which cannot be; or that the defendant must always keep the funds at the place appointed for payment, which would be exceedingly inconvenient, and in many cases absurd; or that the defendant must be presumed to have withdrawn his funds from the place, after the creditor’s failure to demand, unless it was his ordinary place of deposite, (which is the natural and probable course of things), and that he is thus ready, at any time and place, to pay' what he owes, being absolved, however, from interest and costs, if he can shew a readiness to pay on his part; in short, that after such failure, he becomes a debtor at large, with the power, however, in case of punctuality on his part, of protecting himself from damages and costs.
*543 It seems to be admitted, that the law was held according to these principles, until the case of Sanderson v. Bowes, 14 East 500. Thus, in Wild v. Renner, 1 Camp. 425. and Nichols v. Bowes, 2 Camp. 498. Mr. justice Bayley and lord Ellenborough were both of opinion, that in an action against the maker of a note, it is not necessary to aver or prove presentment at the particular place appointed for payment. But in the year 1811, this case of Sanderson v. Bowes came on before the court of king’s bench, and was followed by several others to the same effect. It behoves us, therefore, to exairdne that case distinctly. Tt was an action of assumpsit upon a guinea bank note, “payable on demand at Workington, to R. Nelson or bearer;” and on demurrer to the declaration, it was decided, that a demand at the defendant’s hanking house at Workington, was essential to support the action. And I am strongly inclined to think1 it was properly so decided, as the note was not payable at a ; particular time, hut on demand, and was moreover payable to bearer. Lord Ellenborough himself, incidentally, refers ' to this distinction, though he has not carried it out, as he might well have done. Speaking of the cases cited to shew, that the debtor’s attendance at the place of payment, was '• only matter of defence, he says,—“ Those were cases where ’ the money was to be paid, or the thing done, at a particular 1 day as well as place ; therefore, the party may readily aver, that he was ready at the time and place to pay, and that the creditor was not ready to receive. But here, the time of pay' ment, depends entirely on the pleasure of the holder of the note.” The influence of this fact, and of its being payable to bearer, constitutes the real justification of the judgment in that case. The rules of the law, as to this matter, are all founded on justice and good sense. Thus, if A. promise B. to pay him money at a specified time and place, both parties should attend accordingly. If one promise to pay money at a place certain, at any time during his life, he cannot tender the money at the place when he will, without giving previous notice; for then, his creditor would be bound to perpetual attendance; Co. Litt. 211. a. Dyer 354. pl. 32. 1 Bac. *544 Abr. 671. and, as the time of payment is in his election, he must give notice when he will attend at the place to make payment. So, e contra, when one promises to pay at a particular place, on demand, the time of demand being in the election of the creditor, he ought to make the demand at the place; for the debtor cannot make a tender at the place, until he makes a demand; and thus, he is not in the condition of one who engages to pay at a time specified and at a particular place, and who may therefore discharge himself from damages and costs, by a strict compliance with his engagement. As is well observed, I think, by Holroyd, J. in 6 Eng. C. L. R. 81. “ the notes in Sanderson v. Bowes and Bowes v. Howe, being made payable to bearer, not at any specified time, but merely on his the bearer’s demand, the promisees could not comply with the rule laid down in Co. Litt. 211. a. of giving notice when they would pay the money at their bank, as they could not know who the bearer was, till the money was demanded,” (for it is the bearer at the time of the demand who is entitled to payment.) “Nor was it to be paid but upon demand, which might therefore be deemed a condition precedent, quite consistently with my reasoning and with lord EllenborougKs and my brother Baylefs, as applicable to cases where the money was to be paid at a time and place certain.” The difference, indeed, is obvious and striking; for, where the time and place are certain, a failure to make a regular demand would exonerate the debtor forever, if the undertaking is construed to be a condition precedent; but where the time is uncertain (that is, on demand) though the place is fixed, no such conse-v) quence can arise, from requiring the demand at the place agreed upon by the parties, as a prerequisite to the right of action. I am, therefore, of opinion, that the case of Sanderson v. Bowes does not establish the necessity of averring presentment at the place appointed by the note, where both time and place of payment are specified. The cases of Dickenson v. Bowes, 16 East 110. and Bowes v. Howe, 5 Taun. 30. in the exchequer chamber, upon appeal from the king’s bench, were upon similar notes of the same banker ¡ *545 and to them, therefore, what has been said of Sanderson v. . Bowes strictly applies.
These cases were commented on in Rowe v. Young (which was an action against the acceptor of a bill of exchange), and by most of the judges, I acknowledge, considered as having settled the doctrine as to promissory notes-generally. Yet it is obvious, that Bayley was dissatisfied with his own opinion in Sanderson v. Bowes, and chief justice Abbott very distinctly announces his dissatisfaction, and his determination to reconsider the question, whenever it should again arise.
In America, we have the decisions of the respectable tribunals of other states, in support of the position, that, in an action against the maker, it is not necessary to aver or prove a demand of payment at the time and place appointed. I must content myself, however, with reference to the able opinion of chief justice Spencer in Wolcott v. Van Santvoord, 17 Johns. Rep. 248. as also to Foden v. Sharp, 4 Johns. Rep. 183. Ruggles v. Patten, 8 Mass. Rep. 480. and Bank U. S. v. Smith, 11 Wheat. 171.
Looking upon a promissory note, then, not as commercial paper, I am of opinion, that the principles of the common law are clearly against the necessity of averment and proof of demand of payment at the time and place specified; though I should think otherwise where the place is specified, but the time is not, as where the note is payable on demand to the bearer.
If, however, as is obvious under our statute, this promissory note, negotiable at bank, is to be “ placed on the same footing as foreign bills of exchange,” then the decision of eight judges out of twelve in England, and of the courts of the commercial states of New York and Massachusetts, concur in saying, that the averment and proof of demand at the place, is not necessary in an action against the acceptor of a bill, and of course it is not necessary, in this view of the subject, against the maker of a note.
But it was said that the decision of the house of lords was against the opinion of a majority of the judges, and that it *546 ig of the utmost importance, in relation to the mercantile law, that there should be some uniformity between the decisions of the courts of the two countries. Admitting, however, that we should zealously attempt to preserve this conformity, by vigilantly pursuing their footsteps, and retracing ours whenever they retrace theirs, we have still the difficulty to encounter, arising from the enactment by parliament of statutes which overrule their judicial decisions. Thus, in the case of Rowe v. Young, the house of lords decided, that a memorandum, at the foot of an acceptance, amounted to a qualification of the contract, or to a qualified acceptance. But by statute, that is no longer so; for it is declared to be a general acceptance, unless the words “ only” or “ not elsewhere,” or other like negative words, are used. Here then is, at once, an instance of the impossibility of preserving the wished for uniformity between the commercial law of the two countries; since they must follow the statute, while it is contended, that we must follow the adjudication which is directly in conflict with it.
Again; if it be important to conform our decisions to the commercial law of one country with which we deal, it is equally important as to others, and it may at least be doubted, whether at present the commercial intercourse of the state at large is not as great with New York as with G. Britain. Now, we have seen, that the courts of New York,—filled too with distinguished men,—have distinctly followed the decisions anteriour to ¡Sanderson v. Bowes, and have preferred the opinion of the majority of the twelve judges, to the decision of the house of lords.- The truth is, as none of them strictly speaking, are binding upon us, we can only examine and compare them; and after candidly weighing them, we must adopt those principles, which seem to ourselves most calculated to promote the ends of justice, and most consonant with the great principles of the law.
We come, then, to the case of the indorser. He, it will he recollected, is but collaterally responsible, and he must therefore be dealt with, with the utmost strictness. He had a right to bind himself or .not, and, of course, to declare the *547 terms on which he would be bound. His creditor must comply with those terms ; he cannot alter them. If he engages to pay upon demand at a certain time and place, the demand is essential to his liability. For, in the language of Bayley, J. 6 Eng. C. L. R. 87. “if a man engage to pay, upon demand, what is not his debt,—what he is under no obligation to pay,—what, but for such engagement, he never would be liable to pay to any one,'—a demand is essential and part of the plaintiff’s title.” Apart, therefore, from the circumstances.of excuse for non-presentment which are offered in this case, there can be no doubt, that a strict demand at the time and place on the part of the holder, was essential to charge the indorser. And it is reasonable, that it should be so; for the maker might have been ready to pay at the time and place, and may afterwards have otherwise appropriated the funds. The failure to demand is, in effect, to give him time, which the holder confessedly has no right to give.
What then are the circumstances of excuse, or exemption ?
It is contended, on the part of the holders, that, between the date of the note and its maturity, the maker, with the knowledge and consent of the indorser, conveyed his whole estate to trustees for the benefit of the indorser, and to indemnify him against this very responsibility: and it is argued, that the indorser had thus put himself in the shoes of the maker, and was not entitled to demand, that the holder should have dealt stiictly with the note. Had the transfer been for the payment of the whole note, and had the funds been shewn to be adequate to that, purpose, I should have hesitated to refuse my assent to the force of this reasoning. But this does not appear. The indemnity is only against one fourth of the note, and whether adequate thereto or not, appears from nothing in the cause. We must lake it, that the indorser got all that he could get, but that it falls short of indemnity. And then the question results, is the indorser absolved ?
If the question was merely as to notice, I should incline to think the taking a conveyance of all his property from *548 the maker, ought to dispense with the necessity of notice. The object of a notice to the indorser, is to put him on the alert; to announce to him, that he will be looked to, and to warn him to take care of himself. And hence, even insolvency or bankruptcy is no excuse for want of notice, since it is possible the indorser might find some means to save himself out of the wreck of his debtor’s fortune, or through the assistance of his friends. But when the indorser himself, conscious of his liability, is already on the alert, and proceeds to take care of himself with all diligence and activity, and actually sweeps the whole estate of the maker for his own indemnification; when he has done this with a knowledge of the maker’s insolvency, and after consulting with a friend whether he had better pay the note or suffer it to take its course, cui bono shall the holder give him notice? Is it to stimulate his vigilance, who. has proved himself already so watchful? Is it to warn him to take care of himself, who has been already on the alert, and has swept off land, negroes, stock, household and kitchen furniture, bonds, bills, notes and open accounts, and all other property of the maker ? It were a mockery to give, or to require a notice to be given, to one thus circumstanced. If payment of part (2 Strange 1246. 1 Taunt. 12.) or a promise to pay (Chitty 301.), or to see it paid (6 East 16.), or an acknowledgment that it must be paid, dispenses with the necessity of notice, how much stronger is the case of one who not only confesses his liability, by taking an indemnity providing “ for paying off and discharging the note,” but who takes a conveyance of every article of property held by the maker, and thus prevents the maker’s complying in whole or in part with his engagement to the holder. Accordingly, we find the clearest authority on this subject, in the courts of two of our sister states; Bond v. Farnham, 5 Mass. Rep. 170. and Barton v. Baker, 1 Serg. & Rawle 334. in both of which, the acceptance, by the indorser from the drawer, of a general assignment of his estate and effects, was held to dispense with the necessity of notice. That the assignment was made in this case to a trustee, I consider not at all varying the case.
*549 Bat tliis is not a question as to notice. In this case, the bill never has been presented for payment, at the place appointed; and the question is, whether this assignment of the maker’s effects, for the indemnity of the indorser, places him so far in the shoes of the maker, as to exempt the holder, in an action against tire indorser, from averring and proving a demand at the time and place specified by the bill ?• It seems to have been admitted in the argument, that unless tire indorser has placed himself in the shoes of the maker, this averment and proof cannot be dispensed with. This was properly admitted, upon the ground already stated, that as the indorser had engaged to pay (what was not his own debt) at a certain time and place, the demand is an essential part of the plaintiff’s title, and must therefore be averred and proved. The question, then, really is, whether the indorser has placed himself in the shoes of the maker, by taking this indemnity ? The answer must, I think, be in the negative. Had he received funds adequate to the discharge of the note, he would indeed have been in the shoes of the maker, and no demand at the place would have been essential. But how can he be said to be in the place of the maker, if the assignment is inadequate to the payment? If he was in the shoes of the maker by reason of the assignment, he was so at the instant of that assignment; that is to say, he was from that moment to be considered the real debtor for the whole, while he received indemnity only for a fourth ; and an indemnity too, which might prove inadequate even to that. Moreover, from that instant the holder would have been absolved from all necessity of making a demand, or otherwise proceeding against the maker, whatever might be his subsequent acquisitions, by descent, by marriage, by the 'fortune of trade, or otherwise. I cannot think this reasonable : I cannot think such an inadequate assignment can absolve the holder from his obligation to demand payment, nolis there any authority to sanction the position.
But admit that by taking the assignment, he became fixed for the debt, yet it was not his debt originally, and unless he received full value it did not then become his own debt. *550 And that being so, then, according to the principle laid down at the outset of this opinion, the demand at the time and place was as to him a condition precedent: it constituted part of the plaintiffs’ title to charge him, and was therefore necessary to be averred and proved. Had he been so declared against, and had pleaded that he was ready at the time and place to pay, but the plaintiffs were not there ready to receive, he must have been entirely absolved ; for, as it was not his own debt, as he was only collaterally liable, he was not bound to plead touts temps prist, for he was not bound to be ready any where else, or at any other time, than he had engaged, nor was he bound to bring the money into court. It is hard enough that one man should pay the debt of another, without carrying his engagement to do so beyond its terms; and the creditor, who chooses to avail himself of the engagement of the surety, must adhere with strictness to all the requisitions of the contract on his part.
The opinion here given, it must be observed, is upon the supposition of the bona fides of the indorser. If he knew the maker was insolvent when he indorsed, and if this sweeping deed was given to defraud the holders, (which might indeed be suspected had there been such knowledge of insolvency, as other debts to Watkins are secured and only one fourth of this), the cáse would be very different. As it is, though the holders are entitled in equity to that portion of the trust fund, which according to the deed is applicable to this debt, I do not think they can charge the defendant Thomas Watkins, without alleging and proving a presentment according to the terms of the note.
The fact, that it was discounted bjr consent at the U. /S'. Bank, and of their usage as stated in the exception, can make no difference. They cannot by their usages exempt' themselves from the necessity of due presentment of a note or bill.
The judgment of this court was, that the circuit court erred, 1. in instructing the jury, that by the execution of the deed of trust, the indorser Thomas Watkins was placed in *551 the situation of the maker of the note, though it appears that the deed did not provide for the payment of more than one fourth of the note, and might not have been adequate to that: 2. in instructing the jury, that the indorser having by tire deed of trust the benefit of the effects of the maker, it was unnecessary to demand payment at tire place appointed, in order to fix his liability: 3. in instructing the jury, that the consent,—that the note should be discounted at the Bank of the U. States,—amounted to a consent to an alleged usage at that bank, to retain such notes till the last moment of the last day of grace, instead of presenting them in due time at the bank where they are payable; the court being of opinion, that no sucli usage is justified by law, and that the consent of parties could only be construed to extend to such usages as are consistent with law. Therefore, judgment reversed, verdict set aside, and cause sent back for a new trial.